If it may please the court, Attorney Dennis Ioffe for the petitioner, Zhao Aying. We have here a case where the petitioner admitted to filing a frivolous application. She is therefore only remains eligible for withholding of removal. Under Section 241b-3, she still remains eligible for this relief. Can you explain? I'll ask the government as well. I was very confused about what that regulation meant, given that the statute says the alien shall be permanently ineligible for any benefits under this chapter, which includes withholding in this chapter. So, of course, the regulations can't be directly contrary to the statute. So I was wondering, do these withholding regulations only apply to withholding under Convention Against Torture? Or how do you explain this clear conflict? It does seem curious to me, Your Honor. However, I mean, the section seems pretty clear where it says, and the board recognized it because they still considered withholding, where it says under Section 9A, Section 241b-3, 8 CFR 120820, for the purposes of this section of finding in an alien file, the frivolous asylum application shall not preclude the alien from seeking withholding of removal. That could be under CAT also, though. Of course, CAT is separate from withholding under this chapter. It could be, Your Honor, but for the purposes of this case, I'm sure the petitioner would accept the relief under CAT as well, if that's the only thing available to her since she can no longer apply for asylum and barred from any immigration benefits. So are you aware of any presidential BIA decision? I was not able to find one. Okay, or any decision in this circuit? Any decision regarding to this case, Your Honor. This seems a unique situation. Is your client eligible for withholding under Convention Against Torture? I would argue that she is, and I did argue that in my brief, because she suffered a forced abortion, which under the law of this circuit is considered permanent, and for purposes of withholding, there's a Tang v. Gonzalez. Does Tang apply to Convention Against Torture? I'm not sure they directly addressed it in that case, but I wouldn't see why because torture could be tantamount. She doesn't have a fear of a future abortion because she testified that she couldn't become pregnant. Right, and I believe that's actually one of the reasons the judge used to deny her case, which I don't believe, which I believe is completely erroneous because the question is she suffered an abortion, which they don't even try in the past. Is there a case that says that constitutes it? So we just had a case about female genital mutilation, and we do have a case that says that constitutes a well-founded fear of future persecution as well. Is there a similar case for abortion? Tang v. Gonzalez, Your Honor, which is still a good case. It's still on the Ninth Circuit website, and it even says, the effects of that intrusion last a lifetime. We see no way to distinguish between the victims of forced sterilization and victims of forced abortion for withholding of removal eligibility purposes. And does it say it's a fear of future persecution as well? I guess I didn't remember that. Well, I guess, Your Honor, they said the persecution has serious ongoing effects. A woman who has forced abortion experienced unwanted government interference. It infringes on her bodily integrity, one of the most gruesome human rights violations in the history of the world. So I believe they consider it ongoing forever. I think the main issue in this case, Your Honors, is that the government's argument goes beyond the scope of the board's decision, which did not even consider and adopt the judge's finding that the frivolous determination colors the withholding. The board did not adopt that. There is no mention of that at all. And the government tries to bring it back in, and they try to argue that false and all, false and one, false to all applies to this case. That's a pre-LID case. And not only that, that case, Lee v. Holder, concerned two separate claims for asylum. Here we have two separate applications, so I think the case is distinguished. The petitioner in this case never testified as to her false application. She readily admitted that it was false. So why does that section on withholding exist if being found frivolous make you automatically not credible for withholding of removal and CAT? The question as to credibility in the case in its current posture goes to whether or not she actually had a forced abortion. Not whether she had an abortion, but whether she had a forced abortion. The evidence in front of the IJ was that there was a certificate of abortion. Of course, the certificate didn't say forced or not. These certificates generally do not. I've never seen one that says forced abortion. They say abortion. I don't see how I can get around the IJ's fact-finding. Maybe I would have found the same, maybe I wouldn't have. But it seems to me there was substantial evidence supporting the IJ saying this is just not a believable witness. And I just don't think that she's proven to me, given her past record of falsifications, that this was a forced abortion. I mean, that's what the case is for me. Okay, and I would just note that there was absolutely nothing with regards to the actual past abortion. They did not highlight a single discrepancy in her testimony about the past abortion. There are only concerns where can she conceive in the future. I don't think that's relevant to this case. That really is off to one side, I get that. Here's another question I was not quite focused on as I read the IJ or as I read the BIA nor in the testimony. But she obviously goes to some sort of immigration lawyer or somebody who helps her to prepare the fraudulent application the first time around and to prepare a fraudulent letter that purports to come from her sister and so on. So obviously somebody is helping her make up a story. A disbarred attorney. If she had told the attorney, I had a forced abortion, bingo, she's in. Well, actually, it's in the record, Your Honor. She testified that that first lawyer told her you would have a one-year issue. And so he made up this story so they can get around it. And, yes, she went along with it. The petitioner is a 57-year-old lady with a middle school education. And I think the record reflects that, that, for example, the discrepancy about whether she can conceive, she just didn't understand the question. And the government attorney had to explain it two times. I understand about the problem about the testimony. The government keeps asking these questions, and she gives answers that maybe she understands, maybe she doesn't. Maybe there's trouble with the translation. I've seen case after case, particularly with Chinese applicants, where the translator is bad and it's not at all clear that the person understands. I get all of that. But I'm after a slightly different proposition. I think to get to where you need to get, you've got to tell me either that she didn't tell the lawyer first time around that she'd had a forced abortion, that's possible, or that the lawyer first time around, having heard that story, was so incompetent as not to recognize that that was a get-out-of-jail-free card that automatically provided asylum. Right.  She does say, I did tell the lawyer everything that happened to me, and you said you have to make up this Christian claim. The notaria that worked for the disbarred attorney told her, make up this story and you can get around the claim. And to her credit, she eventually came forward and admitted that everything was false. And if I could reserve the last minute and a half. All right. Good morning, Your Honors. May it please the Court, Timothy Hayes on behalf of the Attorney General. I'd like to begin with Judge Ikuda's question about withholding of removal and how it's possible to have withholding of removal under the Act when the Act prohibits the alien from applying for any benefit. The Attorney General interprets withholding of removal both under the Act and under the Convention Against Torture as protection from removal, which it doesn't encompass a benefit or relief from removal. Is there a regulation to that effect? No, Your Honor, but there is. Is it a presidential PIA opinion? No, Your Honor. So where do we find this interpretation and how is that justified? It might be in the notice and comment to the reg. I'm not sure. The best I can offer you right now is the analogy to reinstatement cases. I'm not sure if Your Honor is familiar with them. Reinstatement cases, if the alien has a prior removal order reinstated, they're not eligible for asylum. The reinstatement statute says they're not eligible for any relief from removal. They're still eligible, however, for withholding under the Act in the convention because the Attorney General has interpreted both of those as protection from removal. And there's a Supreme Court case, I believe it's Fernandez-Vargas. There's a footnote where it notes that the Attorney General has distinguished that. Now, the Supreme Court doesn't pass on whether that's legal or not, but they do note that the person is still eligible. And I would say this is very similar to the reinstatement case. Since it interprets withholding as a protection and not a benefit, they are eligible under the regulation to apply for both. But that's not written in any regulation or official guidance document. I don't think so, Your Honor. The best I can say is it's possible it's in the notice and comment because I know that the reinstatement reg proper does have that in the notice and comment. Not in the reg itself, but in the actual Federal Registry entry. Okay, the second issue I wanted to touch on is the Convention Against Torture. That's not exhausted. In the footnote 1 of the Board's decision, they explain that she did not challenge the Convention Against Torture. She cannot raise it before this Court because there's no jurisdiction for that. So this is solely a withholding of removal under the Immigration and Nationality Act case. Turning to that, the principal reason for denial is the adverse credibility determination, and I'd like to focus on two issues in particular. One was already touched on. She did file a frivolous asylum application, and she admitted that. And she conceded she fabricated the facts in her original asylum application. And this asylum application was very specific. She said that six policemen broke into her home as she was having a religious gathering. She was detained for 23 days. She was severely mistreated. This is not a passing asylum application. This was a serious matter. It was entirely made up. She also conceded that most asylum applicants, they go before an asylum officer when they're filing an affirmative asylum application, which she did. They typically bring their own interpreter or they hire their own interpreter. In this case, she hired her own interpreter, a Mandarin interpreter. That interpreter gave a sworn oath to her before the asylum officer, telling her that she had to tell the truth. She then testified and perjured herself before the asylum officer, consistent with these fabricated facts. So there's false testimony. There's also false testimony before the immigration judge over these facts because the immigration judge asked her when did she enter the United States in order to establish a chain of custody for some of her corroborative documents, and she testified consistent with her frivolous asylum application. The agency was entitled to reject her explanation that she didn't do anything wrong because she was just going with her prior attorney. In three instances at pages 150, 151, 155, 202, and 397, she admitted she knew what she was doing. The other principal reason why the immigration judge denied or found her not credible is she consistently exhibited evasive behavior. Now, she was not responsive to questions asked, and I can appreciate, and I agree because I've seen a lot of Chinese cases myself, often there are interpreter problems. A lot of times the question is never directly answered, even when they try to go around it. But in this case, the immigration judge did an extremely thorough job. At page 157, he goes, Ma'am, are you feeling all right today? I'm good. Do you understand the interpreter? Yes. Are you under the effects of any alcohol or drugs? No. You don't seem to be answering the questions your attorney is going to ask. I'm going to take a break so you can compose yourself. And it wasn't just non-responsive answers to questions. She often rambled when responding to direct questions. At page 152, the interpreter asked the judge for her to slow down because she kept rambling and the interpreter had to interpret properly. The judge told her, Let's go to the restroom. You need to compose yourself. At pages 182, just prior to cross-examination, and this was before any testimony was actually taken because her trial was over two days. This was prior to cross-examination. The IJ asked her if she was all right because she was already crying on the witness stand before any testimony was taken. These are behaviors that, in the immigration judge's experience, are weird. They don't happen in most applications. So he cited those in finding her incredible. As Your Honor was getting to with my colleague earlier, the only evidence of an abortion in this case, setting aside her testimony, is the abortion certificate at page 259. Now, without her credible testimony, we don't even know if that certificate is what it purports to be. So is there any evidence corroborating that she had an abortion, whether forced or not? No, Your Honor, because even if you fully credit that abortion certificate, it doesn't show that it was forced.  Her testimony, which was... That's all there is, Your Honor. There's some background documents in the record, and those actually page 321 says that during the period where she claimed to have had an abortion, which was 1984, there was a notable drop in forced abortions during that period, and that's again at page 321. But the IJ gave the document diminished weight. Yes, Your Honor. He let it in. It appears as though perhaps I'm misreading the record or misunderstand the argument, but it seems like the crux is whether it was a forced abortion. Yes, Your Honor. And we're discrediting the petitioner's credibility in giving that document diminished weight. I guess I'm confused. Are you saying that part of your argument is that there's no indication that she had an abortion, or is it more the forced abortion, which seemed to be kind of what BIA was talking about? The argument is actually both, because I don't believe that the immigration judge even believed that that document was what it purported to be. But he let it in. Well, most immigration judges let almost every document in. They just accord it diminished weight. It's just very common. It's not set up exactly like trial courts, where they're very big on authentication and setting a foundation and a chain of custody. Most of the time, those issues in immigration court go to the reliability of the document and the weight. So if the home letter, the IJ, it was determined, was the home letter had been fabricated, and the IJ seems to suggest that because that document was fabricated, it's more likely that the medical certificate was fabricated. That was one of his concerns, Your Honor. Yes. She submitted a document that she conceded that her attorney wrote, which said that the police were after her in China because of her illegal religion practices. And the immigration judge was rightfully concerned that if she already tendered a false document to the court, he viewed everything else with a lens of suspicion, which he has a right to do, given the facts of this case. Do we know why she came to admit that the prior application was false? Do you know what produced that admission? The only thing we have on the record is her new attorney saying that she told him in his office, and he begged her, well, he didn't beg her, but he told her, you know, you should come clean with this. That's all we have. I admit that there might be an issue, there probably is an issue with ineffective assistance of counsel, but you have to go through the Lozada process, and you have to raise it. Oh, well, there were probably three or four. I mean, it was basically a law firm with a few attorneys, and it's been discredited. And I'll just point out that on page 384 of the State Department report does discuss abortion certificates. It's in 384 of the record. And the State Department, at least at this time, they're only aware of them issued in voluntary abortions, not forced. But, again, we don't know if this is a forced abortion, even if we were to fully credit that abortion certificate that she submitted. NOS, Your Honors, have any further questions? Thank you very much. You've saved some time. Yes. Your Honors, I'd like to address the abortion certificate. I will note that the Board's reason for disregarding it and giving it limited weight is nonsensical. They said, well, it's not as valid because she didn't submit contemporaneous medical documents. She was never asked whether those exist. And the government could have done forensics on this abortion certificate. There is absolutely nothing in the record besides the prior instances to show or suggest that this abortion certificate is not genuine. So you could argue that even outside of her testimony, she has established her claim with this perfectly valid abortion certificate. There is also an IUD document in the record that shows that she still has an IUD all these years later. And, again, the three reasons highlighted by the Board to deny her case do not hold water. One is the messy testimony about whether she can conceive. As I pointed out in the brief, she was completely confused in talking about the IUD. The second one, she remained in the country for a very long time. That doesn't matter with a forced abortion. And, finally, they said the abortion certificate is not from 1984. Again, they didn't check whether one is available, and there is nothing to indicate that it's not genuine. So, yes, there is a frivolous application. However, her testimony on the forced abortion is credible. Thank you. Thank you. Thank both sides for the arguments. The session is now submitted for decision.
judges: W. Fletcher, Ikuta, Freudenthal